JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OUR CLEAN OCEANS, INC.,

             Plaintiff,

        v.

CONTRACTORS WARDROBE. INC.,

           Defendant.

Case No. 2:26-cv-01729-FLA (AYPx)

**CONSENT DECREE**

# **<u>CONSENT DECREE</u>**

The following consent decree ("Consent Decree") is entered into by and between Our Clean Oceans ("OCO" or "Plaintiff") and Contractors Wardrobe, Inc. ("Cw" or "Defendant"). OCO and Cw is each a "Settling Party" and collectively are the "Settling Parties."

**WHEREAS**, OCO is a 501(c)(3) non-profit corporation organized under the laws of the State of California, with its corporate headquarters in Newport Beach, California and a regional office in Beverly Hills, California;

**WHEREAS**, OCO is dedicated to the preservation, protection and defense of the surface, ground, coastal, and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Cw owns and/or operates facilities located at 26121 Avenue Hall, and 26150 Technology Drive, Valencia, California 91355, under Waste Discharger Identification number 4 19I030520 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of the design and manufacture of wardrobe doors, including metal cutting and fabrication processes. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3442, covering Metal Doors, Sash, Frames, Molding, and Trim Manufacturing

**WHEREAS**, OCO alleges that Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402.  33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs or other control measures as necessary to comply with any and all applicable receiving water limitations, including the Santa Clara River, and/or other requirements set forth in the Permit, including compliance with the Criteria for Priority Toxic Pollutants in the State of California ("CTR"), 40 C.F.R. § 131.38, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on August 12, 2025, OCO issued a notice of intent to file suit ("60-Day Notice Letter") to Cw, its registered agent, the U.S. Attorney General ("USAG"), the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit at the Facility;

**WHEREAS**, on February 18, 2026, OCO filed a Complaint against Defendant (the "Complaint") in the United States District Court for the Central District of California (Civil Case No. 2:26-cv-01729-FLA (AYP)) (hereinafter, the "Action");

**WHEREAS**, OCO alleges that Defendants are violating the substantive and procedural requirements of the General Permit and Clean Water Act;

**WHEREAS**, Defendant denies each of OCO's claims in the Notice Letter and the Complaint;

3

**WHEREAS**, the Settling Parties agree it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, Defendant agrees to comply with the current version of the General Permit;

**WHEREAS**, capitalized terms used but not defined herein shall have the meanings ascribed to them in the General Permit; and

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the U.S. District Court for the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3. OCO has standing to bring the Clean Water Act claims raised in the Notice Letter and Complaint.

4. The court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the Term of the Consent Decree, or as long thereafter as necessary for the court to resolve any motion to enforce this Consent Decree.

## I.     OBJECTIVES

5. It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C.

4

§§ 1251 et seq., and to resolve those issues alleged by Plaintiff in its Complaint. Considering these objectives and as set forth fully below, Defendant agrees to comply with this Consent Decree and those applicable provisions of the IGP and Clean Water Act as set forth herein. Specifically, Defendant agrees to comply with Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations set forth in the IGP in the industrial and production areas.

## II.   AGENCY REVIEW AND TERM OF CONSENT DECREE

6.   OCO shall submit this Consent Decree to the United States Department of Justice and EPA (collectively, the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five (45) days after receipt of this Consent Decree by the Federal Agencies, as evidenced by certified mail return receipts or other tracking information, copies of which shall be provided to Cw upon request.  If the Federal Agencies comment negatively on or object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time, not to exceed thirty (30) days.

7.   Following expiration of the Federal Agencies' 45-day review period, OCO shall submit the Consent Decree to the court for entry.

## III.   DEFINITIONS

8.   Unless otherwise expressly defined herein, terms used in this Consent Decree that are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules.

Whenever terms listed below are used in this Consent Decree, the following definitions apply:

   a.   "BAT" means the Best Available Technology Economically Achievable.

   b.   "BCT" means the Best Conventional Pollutant Control

5

Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day.  In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

g.    "Forecasted Rain Event" means a forecasted rain event with a 50% or greater chance of precipitation of 0.1 inches or more at least 48 hours in advance of the expected precipitation as determined by the National Oceanic and Atmospheric Administration.

h.    "MIP" means Monitoring Implementation Plan.

i.    "NAL" means Numeric Action Level.

j.    "PPT" means Pollution Prevention Team.

k.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in the General Permit.

l.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

m.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

n.    "Sample Point" means each designated industrial storm water monitoring location identified in the then-current SWPPP for the

6

Facility.

o.     "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.     "SWPPP" means a Storm Water Pollution Prevention Plan.

q.     "Term" means the period between the Effective Date and the "Termination Date."

r.     "Effective Date" means the date of entry of this Consent Decree by the court.  If, by the end of the forty-five (45) day review period referenced in paragraph 6, *supra*, the Federal Agencies offer no objection, the Settling Parties agree to request immediate entry of this Consent Decree by the court and if, after sixty (60) days, the court has not entered the Consent Decree, the Settling Parties agree that any party to this agreement may request a hearing before the court to seek entry of the Consent Decree.

9.     "Termination Date" shall be defined as:

a.     One (1) year after the Effective Date.

b.     If the Dispute Resolution procedure in Section VI is initiated prior to the date in Paragraph 9.a., above, seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute Resolution procedure that the dispute has been fully resolved, or (2) an order of the court resolving the dispute.

c.     Notwithstanding sections 9.a and 9.b, if the Regional Board approves a Notice of Termination submitted for the Facility pursuant to Section 2.C of the General Permit, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for the Facility, or

7

(2) seven (7) calendar days from Cw's completion of all payments required by this Settlement Agreement.

10. "Wet Season" means the period beginning October 1 of any given calendar year and ending April 30 of the following calendar year.

## IV.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Storm Water Pollution Control Best Management Practices

11. In addition to maintaining the current BMPs listed in its SWPPP at the Facility, Cw shall develop and implement the BMPs identified herein to comply with the provisions of this Consent Decree and the General Permit.

12. Within sixty (60) days of the Effective Date of this Consent Decree, Cw shall develop and fully implement the following BMPs at the Facility:

a. Place Filtrexx Envirosoxx filter socks designed to remove metals at least every 100 feet along the V1 and V3 drainage swales with two layers of socks around sampling locations in the outside industrial portions of the V1 and V3 facilities. This shall include the placement of these filter socks along the northeast storage area of V1;

b. Conduct mechanical sweeping every 6 months during the wet season (i.e., within the last 10 days of September and the last 10 days of March, dependent on the dry weather). Sweeping shall include moving the 40-yard storage containers and outdoor stored materials to access these otherwise inaccessible areas;

c. Conduct weekly hand sweeping and blowing;

d. Continue annual removal of organic matter from the roof;

e. Tarp stockpiled raw industrial metal materials stored outdoors prior to forecasted rain events and during rain events;

f. Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a

8

Forecasted Rain Event, involving visual inspection of any filters and wattles deployed at the site and cover/tarp exposed materials, provided the 24-hour period falls during regularly scheduled business hours;

g. During the Wet Season, as necessary, replace or maintain the wattles, socks, and/or filter media when degraded or ineffective, including when there are rips, tears, or other visual damage, and/or sampling data demonstrating the filtration devices are not sufficiently reducing pollutant concentrations;

h. Institute an equipment and vehicle maintenance program that ensures:

i. no maintenance activities occur outside during wet weather, unless such maintenance is required for safe operation of the Facility (e.g., when a forklift breaks down in a location that prevents ingress/egress); and

ii. maintenance activities occur only in designated work areas or beneath covered maintenance areas.

13. Confirmation of Completion. Within fourteen (14) days of the above BMPs being implemented, Cw shall confirm to OCO via email, with photographs where photographic verification is feasible, that such BMPs have been implemented as set forth above.

**B.** **Storm Water Sampling**

14. Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

a. Regulatory Sampling. During the Term, Cw shall collect samples of storm water discharge from each Sample Point identified in the Facility's SWPPP from QSEs during business hours as defined in the Facility's SWPPP as required by General

Permit § XI.B.  If Cw is unable to collect samples of a presumed QSE, Cw shall provide an explanation via email within fourteen (14) days of a written request by OCO.

b.   <u>Investigative Sampling</u>.  If Cw is required to submit an Action Plan Pursuant to Paragraphs 15 and 16 of this Settlement Agreement, investigative sampling of roof downspouts may be considered for inclusion.  Cw shall provide OCO with a copy of investigative sampling results within fourteen (14) days of receipt of the results from the laboratory.

c.   <u>Sampling Parameters</u>.  All samples collected pursuant to this Settlement Agreement shall be analyzed, at minimum, for the parameters listed in Table 1, with the exception of investigative background sampling performed by Cw that only requires analysis of specific limited parameters.

d.   <u>Laboratory and Holding Time</u>.  Except for pH samples, Cw shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136.  Analysis of pH shall be completed onsite within fifteen minutes of sample collection pursuant to 40 C.F.R. Part 136.

e.   <u>Detection Limit</u>.  Cw shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below in Section C.

f.   <u>Reporting</u>.  Cw shall provide OCO with notice via email within fourteen (14) days of uploading and certifying laboratory results from a collected sample to SMARTS in accordance with the General Permit.

## C.    **Action Plans and Stipulated Penalties**

15.    <u>Action Plan Trigger</u>.  Cw shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the values set forth in Table 1 below (the "Table 1 Values").  Failure to achieve Table 1 Values shall not be deemed a violation of the Permit or this Consent Decree so long as Cw continues to make timely and diligent efforts as required by the Permit and herein to further reduce the level of pollutants in the discharges.  An "Exceedance" of Table 1 is defined consistent with Section I.N.76 of the General Permit and will only occur for samples collected following implementation of the BMPs outlined in Paragraph 12.  The Action Plan Requirements are forth in Paragraph 16 below.

**Table 1. Numeric Values for Storm Water Discharges**

| Parameter | Numeric Level | Source of Level |
|---|---|---|
| pH | 6.0 - 9.0 | Instantaneous NAL |
| Total Suspended Solids | 100 mg/L | Annual Average NAL |
| Oil and Grease | 15 mg/L | Annual Average NAL |
| N+N | 0.68 mg/L | Annual Average NAL |
| Total Recoverable Aluminum | 0.75 mg/L | Annual Average NAL |
| Total Recoverable Iron | 1.0 mg/L | Annual Average NAL |
| Total Recoverable Zinc | 0.26 mg/L | Annual Average NAL |

16.    In the event the requirement to prepare an Action Plan is triggered at the Facility pursuant to Paragraph 15 above, Cw shall prepare and submit to OCO a plan for reducing and/or eliminating the discharge of the parameter in question during the next reporting year at the Facility (an "Action Plan").  In any year that an

11

Action Plan is required, such Action Plan shall be submitted by August 15 of the Reporting Year subsequent to the Reporting year in which an Exceedance occurred.

    a.    Each submitted Action Plan shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s); (2) an assessment of the potential source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the Table 1 values, or the results of a pollutant source demonstration allowed by the Level 2 Exceedance Response Action requirements of IGP section XII.D.2, as well as the design plans and calculations of these additional BMPs, as appropriate; and (4) time schedule(s) for implementation of the proposed BMPs. Within fourteen (14) days of the BMPs set forth in the Action Plan being implemented, Cw shall confirm to OCO via email, with photographs where reasonable, that such BMPs have been implemented as set forth in the Action Plan.

    b.    <u>Action Plan Review</u>.  OCO shall have thirty (30) days upon receipt of Cw's complete Action Plan to provide Cw with comments.  Within thirty (30) days of receiving OCO's proposed revisions to an Action Plan, Cw shall consider each of OCO's recommended revisions and accept them or, alternatively, justify in writing why any comment is not being incorporated.  Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.  Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

/ / /

     c.     When an Action Plan is completed, Cw shall revise the Facility SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan.

     d.     <u>Action Plan Payments</u>.  If Cw is required to submit an Action Plan to OCO in accordance with Paragrapha 15 and 16 above, Cw shall make a payment of Three Thousand Dollars ($3,000.00) per Action Plan concurrently with each Action Plan submittal to OCO under this Section (not to exceed two Action Plans).  Payments are due at the same time the applicable Action Plan is submitted and shall be made to: Our Clean Oceans, sent via certified mail or overnight delivery to 2618 San Miguel, Suite 1885, Newport Beach, CA 92660.

**D.    <u>Visual Observations</u>**

17.    <u>Storm Water Discharge Observations</u>.  During the Term of this Consent Decree and during Cw's operating hours, Cw shall conduct visual observations during each QSE that is sampled.

18.    <u>Monthly Visual Observations</u>.  During the Term, appropriately trained staff of Cw or a licensed professional shall conduct monthly non-storm water visual observations of the Facility in accordance with the General Permit.

19.    <u>Non-Storm Water Discharge Observations</u>.  During the Term of this Consent Decree, Cw shall conduct monthly non-storm water visual observations pursuant to the Storm Water Permit as part of the Facility's monthly dry weather inspections.

20.    <u>Visual Observation Records</u>.  Cw shall maintain observation records to document compliance with Paragraphs 18 and 19 above and shall provide OCO with copies of such records within fourteen (14) days of receipt of OCO's written request.  Such records shall include: the person(s) who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all

observations thereof, including but not limited to: (i) whether BMPs are in proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) other conditions that lead to pollutant loading in storm water discharges.

**E.      Employee Training Program**

21.     During the Term, prior to the start of the 2026-27 Wet Season, Cw shall provide a QISP conducted training to personnel responsible for implementing General Permit compliance at the site pursuant to the General Permit

**F.      Storm Water Pollution Prevention Plan Revisions**

22.     Initial SWPPP Revisions.  Cw shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to OCO within sixty (60) days of the Effective Date for OCO's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements if applicable:

a.      A pollutant source assessment, including all elements required by section X.G. of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads.

b.      A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by the General Permit.

c.      Descriptions of all BMPs in accordance with the General Permit, including the BMPs required by this Consent Decree.

d.      Site maps that comply with the General Permit and provisions of this Consent Decree.

e.      A MIP as required by the General Permit; and

f.      A designation (by position/title) of employees responsible for

14

carrying out storm water management, monitoring, sampling, and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.

23.   Additional SWPPP Revisions.

    a.   Within thirty (30) days after approval of any Action Plan by OCO, Cw shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the updated SWPPP to OCO

### G.   Compliance Monitoring and Reporting

24.   In the event of a dispute regarding Cw's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at OCO or Cw's request.  OCO shall not unreasonably request, and Cw shall not unreasonably deny, one additional Site Inspection.  Any Site Inspection shall occur Monday through Friday, excluding Federal holidays, during normal business hours. OCO will provide Cw with at least seventy-two (72) normal business hours' notice prior to a Site Inspection.  Notice will be provided by electronic mail to the individual(s) designated below.  As used throughout this Paragraph 24, "normal business hours" shall mean and refer to the Facility operating hours as identified in the Facility's SWPPP.  The Parties agree to meet in good faith to accommodate the needs and schedules of both Parties and their representatives to facilitate any dry weather inspection.

25.   Document Provision.  During the Term, Cw shall notify and submit documents to OCO as follows:

    a.   Cw shall notify OCO within fourteen (14) days, by electronic mail to the individual(s) designated below when storm water sample analytical results and Facility SWPPP updates are submitted/certified to SMARTS and/or investigative storm water

sample analytical results are received from the laboratory as explained above.

26. <u>Compliance Monitoring</u>.  Cw shall partially defray costs associated with OCO's monitoring of Cw's compliance with this Settlement Agreement during the Term by paying Five Thousand Dollars ($5,000.00), which represents $5,000.00 per year of the Term.  The payment will be made within fourteen (14) days after receiving Notice of the Effective Date of this Consent Decree.  The payment shall be made via check, made payable to: Our Clean Oceans, sent via certified mail or overnight delivery to 2618 San Miguel, Suite 1885, Newport Beach, CA 92660.  Failure to submit payment as required under this Paragraph shall constitute breach of the Consent Decree.

## V.   <u>ENVIRONMENTAL MITIGATION PROJECT, LITIGATION FEES AND COSTS, AND MISSED DEADLINES</u>

27. <u>Environmental Mitigation Project</u>.  To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities that discharge to waters tributary to the Santa Clara River, Cw shall make a payment totaling Two Thousand Five Hundred Dollars ($2,500.00) to The Nature Conservancy Santa Clara River Conservation Program made within thirty (30) days of the Effective Date, payable to The Nature Conservancy and sent via overnight mail to 830 S Street, Sacramento, CA 95811. Failure to submit payment as required under this Paragraph shall constitute breach of the Consent Decree.

28. <u>OCO's Fees and Costs</u>.  Cw shall pay a total of Forty-Two Thousand Five Hundred Dollars ($42,500.00) to OCO to reimburse partially OCO for its investigative fees and costs, expert/consultant fees and costs, reasonable attorney's fees, and other costs incurred as a result of investigating and negotiating a resolution of this matter.  Twenty-One Thousand Two Hundred Fifty dollars ($21,250.00) shall be paid to each of OCO's counsel, Actium LLP, and Cw's counsel, AALRR, to be

held in their respective client trust accounts in trust until the Effective Date.  Within three (3) business days of notice of the Effective Date, AALRR shall send the money it holds in trust to Actium LLP and Actium LLP can release the money it holds in trust, and may dispense the fees appropriately per its agreement with OCO.  The payment to Actium, LLP shall be delivered by wire transfer or by check via overnight mail.  Failure to submit payment as required under this Paragraph shall constitute breach of the Consent Decree.

29.    Missed Deadlines.  For any payment, document, report, or communication deadline required by this Consent Decree which is missed, OCO shall promptly notify Cw in writing and provide Cw no fewer than five (5) business days to cure the failure.  In the event Cw fails to submit to OCO and cure any payment, document, report, or communication required by this Consent Decree, Cw shall pay a stipulated payment of Five Hundred Dollars ($500.00) per week that such deadline is missed and not cured during the foregoing notice-and-cure period.  Such stipulated payments shall be made by check payable to The Nature Conservancy.  Cw agrees to make the stipulated payment within twenty-one (21) days after the resolution of the event that precipitated the stipulated payment liability.  Failure to submit payment as required under this Paragraph shall constitute breach of the Consent Decree

## VI.    DISPUTE RESOLUTION

30.    Court Enforcement Authority. This court shall retain jurisdiction over this matter for the Term of this Consent Decree for the purposes of enforcing the terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree.  The court may enforce the terms of this Consent Decree and award all available legal and equitable remedies, including contempt.

31.    Meet and Confer. The Settling Parties shall at all times work informally in good faith to address any issues that may arise concerning Cw's compliance with

the Storm Water Permit and the Clean Water Act occurring or arising after the Effective Date of the Consent Decree; however, a Settling Party shall be able to invoke the dispute resolution procedures of this Section VI by notifying all other Settling Parties in writing of the matter(s) in dispute and the disputing party's proposal for resolution.  The Settling Parties shall then meet and confer in good faith (either via video conference or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days after the meet and confer. The Settling Parties may, but are not required to, elect to extend these time periods to resolve the dispute without court intervention.

32.     <u>Formal Resolution</u>.  If the Settling Parties cannot resolve a dispute through the meet and confer process, either Settling Party may invoke formal dispute resolution by filing a motion before the court presiding over this action.  The Settling Parties agree to request an expedited hearing schedule on the motion.

33.     <u>Fees and Costs</u>.  If intervention by the court is required, litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing party as determined by the court.

## VII.   <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

34.     <u>OCO's Waiver and Release of Cw</u>.  Upon the Effective Date of this Consent Decree, OCO, on its behalf and on behalf of its officers and directors, employees, and each of their successors and assigns, and its agents, attorneys and other representatives hereby releases and waives any and all claims against Cw and any other owners and/or operators of the Facility, and each of Cw's and such owners and/or operators of the Facility's respective officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, insurers, landlords, lenders, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives (collectively, the "Cw Releasees") waives all claims which were or could have been asserted in

the 60-Day Notice Letter or the Complaint, up to and including the Termination Date of this Consent Decree.

35.    Cw's Waiver and Release of OCO.  Upon the Effective Date of this Consent Decree, Cw, on its own behalf and on behalf of its officers and directors, employees, and each of their successors and assigns and its agents, attorneys and other representatives hereby releases and waives any and all claims against OCO, each of its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, insurers, landlords, lenders, shareholders, and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants and other representatives (collectively, the "OCO Releasees") waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, OCO's Complaint up to and including the Termination Date of this Consent Decree.

## VIII. GOOD FAITH SETTLEMENT

36.    The Settling Parties stipulate and agree, and by entry hereof the court approves and finds that this Consent Decree between and among OCO and Cw was made in good faith and is fair, reasonable, and consistent with the purposes of the Clean Water Act.  Wherefore, upon entry by the court, the Consent Decree is approved as a good faith settlement, all pending claims against Cw shall be dismissed with prejudice, and any claims against the Cw Releasees, or any of them, by any non-settling party regarding matters addressed in the Complaint and Consent Decree thereon are barred, whether brought in federal or state court.

## IX. MISCELLANEOUS PROVISIONS

37.    No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation on disputed claims. Neither this Consent Decree, the implementation of additional BMPs, nor any payment made pursuant to this Consent Decree shall constitute or be construed as a

finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor as an admission of violation of any law, rule, or regulation. Cw maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

38. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Electronic transfers of original or digital signatures shall be deemed to be an originally executed counterpart of this Consent Decree.

39. <u>Force Majeure</u>. No Settling Party shall be considered in default in the performance of any of its respective obligations under this Consent Decree when performance becomes impossible due to an event of Force Majeure. Force Majeure is any event arising from: war; fire; earthquake; windstorm; flood or natural catastrophe; civil disturbance; vandalism; pandemic or public health threat; sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

40. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

41. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

42. <u>Severability</u>. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the

enforceable provisions shall not be adversely affected.

43.   <u>Notices and Correspondence</u>.  All notices and/or documents or communications required herein or any other correspondence pertaining to this Consent Decree shall be sent by either (1) electronic mail (which shall be deemed submitted immediately after receipt if sent before 5 p.m. PT, or the next business day if sent after 5 p.m. PT) or (2) via overnight delivery with signature required for proof of receipt, as follows:

<u>If to OCO</u>:

Our Clean Oceans

Attn: Compliance Manager

Email: reporting@ourclenaoceans.org

2618 San Miguel, Suite 1885

Newport Beach, CA 92660

<u>With a copy to:</u>

Mares Legal, P.C.

Attn: Tim Mares

Email: tim@mareslegalpc.com

100 W Chapman Ave., Suite 200

Orange, CA 92866

<u>If to Cw</u>:

Contractors Wardrobe, Inc.

Attn: Jarod Butts

Email: AgreementNotice@CwDoors.com

26121 Avenue Hall

Valencia, CA 91355

/ / /

With a copy to:

Brian Wheeler

Atkinson, Andelson, Lya, Ruud, and Romo

12800 Center Court Drive, Suite 300

Cerritos, CA 90703

Email: bwheeler@aalrr.com

Any change of address(es) shall be communicated in the manner described above for giving notices.

44.     Modification of the Consent Decree.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, extended, or terminated unless by a written instrument, signed by the Settling Parties.

45.     Full Settlement.  This Consent Decree constitutes a full and final settlement of this matter.

46.     Negotiated Settlement.  The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and/or ambiguity shall not be interpreted against any party.

47.     Integration Clause.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.     Authority.  The undersigned representatives for each Settling Party each certify they are fully authorized by the Settling Party whom they represent to enter into the terms and conditions of this Consent Decree. The  Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to bind legally the Settling Parties to its terms.

22

Validity. The Settling Parties agree to be bound by this Consent Decree and not contest its validity in any subsequent proceeding to implement or enforce its terms.

### FINAL JUDGMENT

Upon approval and entry of this Consent Decree by the court, this Consent Decree shall constitute a final judgment between Plaintiff and Defendant.

The Clerk of court shall close the action administratively.

IT IS SO ORDERED.

Dated: April 20, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

23